IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

JILL I. PODGORNIK,                          )
                                            )
                    Plaintiff,              )
                                            )
vs.                                         )        Case No. 14-0459-CV-S-ODS
                                            )
CAROLYN W. COLVIN,                          )
Acting Commissioner of Social Security,     )
                                            )
                    Defendant.              )

ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability benefits under Title II.  The Commissioner's decision is affirmed.

I.  BACKGROUND

Plaintiff's arguments in this forum focus on her mental impairments, and the Court's discussion will follow suit.  Plaintiff was employed until late September 2011, at which time she was fired for an alleged violation of workplace rules, the nature of which need not be delved into at this juncture.  Plaintiff had previously been diagnosed with depression and anxiety and had been taking medication for her condition; however, her condition did not preclude her from working at her last job for six years before she was fired and at other jobs before that.  E.g., R. at 32, 132.  Shortly after being fired, however, Plaintiff underwent a serious episode of decompensation and was hospitalized on September 29, 2011.  While hospitalized – and for a period of time thereafter – she was treated by Dr. Subbu Sarma.  Dr. Sarma increased Plaintiff's dosage of Risperdal and Zoloft.  R. at 285-86.  On October 3, Plaintiff was "a bit less paranoid" and "her suicidal thoughts ha[d] decreased somewhat."  Plaintiff and her husband discussed plans to get Plaintiff reinstated, including pursuing remedies with her union.  Dr. Sarma

maintained Plaintiff's medication.  R. at 294.  Plaintiff was discharged on October 5, and Dr. Sarma's discharge summary reflects that Plaintiff's mental status was normal, and her medications were maintained.  R. at 295-96.  Plaintiff returned to Dr. Sarma in early November, and reported that she was "going to have a meeting with her union soon in the hopes that she can get her job back.  She would really like to get her job back, but she seems to be prepared that if she does not she will be able to maintain her composure."  The symptoms that led to Plaintiff's hospitalization had not returned, and Dr. Sarma wrote that Plaintiff was "doing quite well and I believe she is nearly back to her baseline."  R. at 317-18.  Plaintiff returned on January 9, 2012, and again Plaintiff reported no problems of any significance.  R. at 348.

Less than three weeks later, Plaintiff reported that she was "disorganized . . . . having trouble cooking and doing other things she used to perform well . . . has low motivation and trouble with focus.  Even small chores are taking her all day, and she is unable to complete them."  Relying on Plaintiff's report, Dr. Sarma wrote that "[i]t is somewhat concerning that, even with the stress of the workplace removed, she is functioning only marginally, if that, at home with respect to activities of daily living."  He then indicated Plaintiff could not work.  R. at 347.  The next day, Dr. Sarma wrote a letter for Plaintiff to use in connection with this application for benefits.  He intimated that Plaintiff's schizoaffective disorder affected her ability to work even before her hospitalization as evidenced by the fact that she had been able to keep a job for a few years at a time.  Setting aside the fact that this may have been a vocational (and not a medical) opinion, the factual predicate is incorrect, as Plaintiff testified she had her last job for six years before she was fired and she held her prior job for almost four years.  R. at 32, 132.  Regardless, Dr. Sarma's letter continues by averring that Plaintiff remained unable to work since her hospitalization because she had "low energy, depressed mood, paranoia, and problems with attention, concentration, and motivation."  He also advised that it was "very possible that the stress of trying to maintain employment may destabilize her and result in increased depression, paranoia, suicidal thinking, and rehospitalization."  R. at 350.

Despite the dire change in Plaintiff's condition, Dr. Sarma did not see her again for more than five months.  In the interim Plaintiff had obtained a part-time job; at some

2

point she also applied for and obtained unemployment benefits, and while the Record is not clear, this appears to have occurred in this time frame. In any event, on June 6 Dr. Sarma wrote that Plaintiff was "[f]unctioning fair at job" but she described it as a "struggle." She was not reporting depression or paranoia, and he described her mood as stable and her affect as blunted, and he diagnosed Plaintiff as suffering from biopolar disorder without psychotic behavior. R. at 474. On September 9, Plaintiff reported that she was "having some strange periods where her 'eyes roll up and I am looking at the ceiling', this generally happens at work, she feels impaired when this occurs but has continued her shift albeit with difficulty." Dr. Sarma concludes these episodes "may be anxiety related" and prescribed Xanax; he also opined that Plaintiff could not work more than fourteen hours per week as she was "struggling" with such a schedule. R. at 473. On December 26, Dr. Sarma described Plaintiff as capable of attending to basic activities of daily living and exhibiting no paranoia or psychosis. He also opined that Plaintiff could only work a couple of days a week and only for a couple of hours each day. R. at 472.

Dr. Sarma also completed two Medical Source Statements ("MSS"). The first is intended to establish Plaintiff has a listed impairment, and purports to describe her condition from 1990 to the present (even though Dr. Sarma first saw Plaintiff in 2011). This MSS indicates Plaintiff has marked limitations in her ability to maintain social functioning, concentration, persistence, or pace, suffers from repeated episodes of decompensation of extreme duration, and suffers from depression that manifests in a variety of ways. R. at 462-65.

The second MSS indicates Plaintiff has moderate limitations in her ability to remember locations, work-like procedures and short/simple instructions, work in coordination or proximity with others, and interact with the public. It also reflects that Plaintiff has marked limitations in her ability to:

- understand, remember and carry out detailed instructions,
- maintain attention and concentration,
- perform activities in a schedule or maintain attendance,
- sustain a routine without special supervision,
- make simple work-related decisions,

3

- complete a normal workday or normal workweek,

- get along with coworkers without distraction,

- maintain socially appropriate behavior,

- adhere to basic standards of neatness and cleanliness, and

- respond appropriately to changes in the work setting.

In the second MSS's narrative portion, Dr. Sarma wrote that Plaintiff "has a long history of depression with psychotic features" that "have increased in recent years." He also opined that her symptoms were "incompatible with full time employment." However, he also indicated these limitations commenced in January 2009 – or, more than two years before Plaintiff was fired and more than two years before Dr. Sarma began treating her. R. at 466-68.

In December 2011, Plaintiff began vocational rehabilitation at The Rehabilitation Institute; Kate Rustan was her counselor. Initially, Plaintiff seemed interested in having The Rehabilitation Institute help her get reinstated at her prior job. Rustan's notes indicated Plaintiff slept until one p.m. and had a "flat effect, seems paranoid." R.at 354. In January, Plaintiff continued to focus on getting rehired by her former employer. Rustan noted Plaintiff had "poor hygiene + dress," that she and her husband "constantly call," and that the staff had seen Plaintiff "perform odd ritual like behavior in the library." R. at 355. In February 2012, Rustan wrote that Plaintiff had made "many" angry phone calls and appeared to be paranoid. R. at 356. In January, Rustan also completed a Function Report. At this time, Rustan had known Plaintiff for two months. The Function Report purports to relate information about Plaintiff's daily activities at home. The only information that could have been observed first-hand by Rustan (and thus was not information provided by Plaintiff herself) appear in Sections C and D of the Function Report. There, Rustan described Plaintiff as "confused, unmotivated, paranoid" and "unkempt." R. at 164-71.

A state-agency psychologist, Dr. Keith Allen, completed an assessment of Plaintiff's medical records on April 10, 2012. This assessment indicated Plaintiff was moderately limited in her ability to interact with the public and understand, remember and carry out detailed instructions.

4

The ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work but could not work in a job that was skilled or semi-skilled or that required interaction with the public. These limitations were necessary to accommodate Plaintiff's limitations in her abilities to socially function in an appropriate manner or to concentrate. Based on testimony from a vocational expert ("VE") the ALJ found Plaintiff could not return to her past relevant work but could perform other work in the national economy.

## II.   DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

### A.

The Court begins by analyzing Plaintiff's claim that the ALJ improperly discounted her testimony. The ALJ found Plaintiff was "not entirely credible" for a variety of reasons, including: she claimed to suffer from limitations and symptoms that she denied in statements she made to Dr. Sarma, her failure to seek "the degree of medical treatment one would expect for a totally disabled individual," the positive effects of medical treatment, and the fact that Plaintiff filed for and obtained unemployment

5

benefits (which meant she "was attesting to her readiness and willingness to seek employment."). The ALJ noted Plaintiff's "strong work history prior to the alleged onset date," but found the other factors outweighed this one. R. at 19-20.

Plaintiff's argument takes the form of asking the Court to reevaluate her credibility. This is something the Court cannot do. The Court cannot substitute its judgment of the facts for the ALJ's. E.g., Baldwin v. Barnhart, 349 F.3d 549, 555 (8th Cir. 2003). All the Court can do is confirm that the law permits consideration of the factors relied upon, and there is no serious argument to the contrary presented.

<u>B.</u>

The issue of Plaintiff's credibility addressed, the Court now turns to Plaintiff's argument that the ALJ should have accorded more deference to the reports from Dr. Sarma and Ms. Rustan. With respect to Dr. Sarma, a treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record. E.g., Anderson v. Astrue, 696 F.3d 790, 793-94 (8th Cir. 2012); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996). In addition, "[a] treating physician's own inconsistency may also undermine his opinion and diminish or eliminate the weight given his opinions," such as when he offers an opinion that is inconsistent with his contemporaneous treatment notes. Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006). Here, Dr. Sarma's Medical Source Statements reflect more serious limitations than those reflected in his contemporaneous treatment notes. To the extent these differences can be explained, they appear to be based entirely on Plaintiff's statements about what she can and cannot do. Having found Plaintiff's statements about her capabilities were not fully credible, the ALJ was entitled to reject Dr. Sarma's diagnosis based on his belief of those statements. To the extent Plaintiff contends the ALJ was obligated to accept all or none of Dr. Sarma's opinions, the law does not require such a result. Finders of fact are permitted to believe all of what a witness says, some of it, or none of it.

Ms. Rustan is not a medical source, and much of what she reported consisted of Plaintiff's own statements. Once again, as the ALJ found Plaintiff's statements were not

6

fully credibile, the ALJ was entitled to accord little weight to Ms. Rustan's report based on Plaintiff's statements. Plaintiff contends the consistency between Plaintiff's statements and Ms. Rustan's report demonstrates credibility, but this is not a legally compelled conclusion. And, to the contrary: the fact that Plaintiff made the same statements to Ms. Rustan as she made to the ALJ does not make them more credible just because Ms. Rustan wrote them down.

Plaintiff also faults the ALJ's reliance on the state-agency psychologist's reports because he did not examine Plaintiff and his report was issued in April 2012 – before Dr. Sarma's reports from later that year. The ALJ was aware of this fact. R. at 20. However, having found Dr. Sarma's report was not fully believable, the ALJ was entitled to rely on the opinion of a non-examining expert. E.g., Hacker, 459 F.3d at 937. Moreover, as the additional reports – principally, the two Medical Source Statements – were found to not be reliable, the psychologist's inability to consider them is of little importance.

## C.

Plaintiff contends the case must be remanded because the ALJ did not (1) ask the VE about inconsistencies between her testimony and the Dictionary of Occupational Titles ("DOT") and (2) failed to solicit the VE's qualifications. As to the first issue, the ALJ was required to resolve any inconsistencies between the VE's testimony and the DOT, Jones v. Astrue, 619 F.3d 963, 978 (8th Cir. 2010) – but Plaintiff does not allege that any such inconsistencies exist, so Plaintiff has not demonstrated that the ALJ failed in this obligation. As to the second issue, Plaintiff points out that the undersigned has previously remanded a case when the Record did not establish the VE's qualifications. However, the Record's silence on the issue was the critical issue, and in that case the Commissioner conceded the VE's qualifications "were not established on the Record" but characterized this omission as harmless. The Court disagreed, holding the omission was not harmless. Goss v. Astrue, No. 08-0255-CV-ODS, slip op. at 2 (W.D. Mo. Jan. 5, 2009). In contrast, the Commissioner does not concede the VE's qualifications were not established. The Record reflects that the VE's qualifications

7

were provided to Plaintiff's counsel before the hearing.  R. at 92.  While the better practice would have been for the ALJ to confirm that counsel had no objection to the VE's qualifications, counsel had the information necessary to evaluate and register any concerns during the hearing.

### III.  CONCLUSION

The Commissioner's final decision denying benefits is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

DATE: April 20, 2015

Case 4:14-cv-00459-ODS   Document 13   Filed 04/20/15   Page 8 of 8